FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 24 2009

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CENTRAL ARKANSAS LIBRARY SYSTEM                              PLAINTIFF

VS.                    NO. 4:09-CV-221 BSM

This case assigned to District Judge Miller
and to Magistrate Judge Jon W

L. R. MOURNING CO., INC.                                     DEFENDANT

## COMPLAINT

Plaintiff Central Arkansas Library System ("CALS"), for its complaint, states:

### I.      Parties, Jurisdiction, and Venue

1.      CALS is an Arkansas nonprofit corporation with its principal place of business at 100 Rock St., Little Rock, Arkansas 72201 (Pulaski County).

2.      Defendant L. R. Mourning Co., Inc., ("Mourning") is an Texas corporation whose principal place of business is 8140 Walnut Hill Lane, Ste. 501, Dallas, TX 75231.

4.      There is complete diversity of citizenship in this case. Plaintiff is an Arkansas corporation. Defendant is a Texas corporation. The Amount in controversy exceeds $75,000, exclusive of interest and costs. This court has jurisdiction pursuant to 28 U.S.C. § 1332.

5.      A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. Moreover, defendant is licensed in Arkansas as a foreign corporation and regularly transacts business in Arkansas sufficient to subject it to personal jurisdiction in this judicial district. This district is the proper venue pursuant to 28 U.S.C. § 1391(a) and (c)

### II.  First Claim for Relief - Breach of Contract

Dockets.Justia.com

6. CALS realleges and reasserts the allegations of paragraphs 1-5 of this complaint as if restated verbatim.

7. On or about February 19, 1996, CALS entered into a Standard Form Agreement Between Owner and Contractor ("Agreement") for the construction of a new branch library at 11800 Chester Street, Little Rock AR 72206 ("Williams Library"). A copy of the Agreement, is attached hereto and incorporated herein as Exhibit "A."

8. The Agreement provided for construction and installation of a heating, ventilation and air-conditioning ("HVAC") system, including chill water and hot water loop piping system, as specified by the plans and the project manual.

9. The Project Manual, relevant portions of which are attached hereto and incorporated herein as Exhibit "B", provides that the pipes to be used in for the heating and chilled water piping were to be Schedule 40 black steel or Type "L" copper, hard drawn pipes. So long as one type of piping was used for the entire system, the Project Manual allowed the Contractor discretion to use Type "K" copper, hard drawn pipe for the system.

10. On May 30, 2007 and again on September 17, 2007, pipes in the HVAC system of the Williams Library burst, causing water damage, and requiring CALS to expend money in repairs.

11. During the investigation of the cause of the burst pipe, CALS discovered that the piping used by Mourning or its subcontractors in the HVAC system was Schedule 10 pipe rather than the pipe specified in the Project Manual.

12. The use by Mourning or its subcontractors of Schedule 10 pipe rather than the pipe specified in the Project Manual was a direct and proximate cause of the leaks in the HVAC discovered on May 30, 2007 and September 17, 2007.

13. As a result of the failure of the HVAC system, CALS has incurred damages, including but not limited to water damage to library books, drop ceilings, carpets and other property, costs expended in repair of the system and replacement of all pipe that did not match the specifications set forth in the Project Manual.

14. Pursuant to Ark. Code Ann. § 16-22-308, CALS is entitled to its reasonable attorneys' fees and costs incurred in bringing and prosecuting this action.

15. CALS has made efforts to secure payment for the repairs and other damages resulting from defendants breach of contract, but those efforts have been unavailing.

### III. Second Claim for Relief - Fraudulent Concealment

16. CALS realleges and reasserts the allegations of paragraphs 1-15 of this complaint as if restated verbatim.

17. Mourning or its subcontractors concealed its use of Schedule 10 pipe rather than the required Schedule 40, Type "L" or Type "K" pipe by covering the pipes with insulation prior to inspection. This was a material concealment because CALS would not have accepted the work as complete knowing that there were nonconforming pipes used in the HVAC system.

18. With the HVAC pipes covered by insulation, CALS was prevented from discovering the use by Mourning or its subcontractor of Schedule 10 pipe in violation of the terms of the Agreement.

19.     Mourning or its subcontractor covered the pipes before inspection with the intention of concealing their use of material that did not conform to the specifications of the Agreement and the Project Manual.

20.     Because the Agreement and the Project Manual specified that the pipes were to be covered with insulation, CALS was induced not to inspect the actual pipe beneath the insulation.

21.     The concealment by Mourning or its subcontractor of the use of Schedule 10 pipe in the HVAC system was a direct cause of the damages incurred by CALS.

22.     Because of the fraudulent concealment of the use of nonconforming pipe in the HVAC system, CALS did not discover this problem until May 30, 2007.

WHEREFORE, plaintiff Central Arkansas Library System prays that judgment be entered in its favor on its claim against defendant L.R. Mourning Co., in the amount of $91,277.08, or such amount as remains unpaid as of the date of judgment, together with pre-judgment and post-judgment interest, attorneys' fees, and costs as permitted by law.

Trial by jury is requested.

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: bbrownstein@wlj.com

By _____
        Bettina E. Brownstein (85019)
        Brian J. McNamara (2007219)
Attorneys for Central Arkansas Library System



AIA Document A101

# Standard Form of Agreement Between Owner and Contractor

*where the basis of payment is a*

*STIPULATED SUM*

## 1987 EDITION

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION.*

*The 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.*

This document has been approved and endorsed by The Associated General Contractors of America.

## AGREEMENT

made as of the 19th day of February in the year of Nineteen Hundred and Ninety-Six

**BETWEEN** the Owner:
*(Name and address)*

City of Little Rock as Trustee for:
Central Arkansas Library System
700 S. Louisiana St.
Little Rock, Arkansas 72201

and the Contractor:
*(Name and address)*

L.R. Mourning Co., Inc.
General Contractors
2230 Cottondale Lane, Suite 5
Little Rock, Arkansas 72202

The Project is:
*(Name and location)*

Central Little Rock Branch Library
18th & Chester Streets
Little Rock, Arkansas

The Architect is:
*(Name and address)*

Architecture Innovations Group
209 West 2nd Street, Suite 210
Little Rock, Arkansas 72201



PLAINTIFF'S
EXHIBIT
A

The Owner and Contractor agree as set forth below.

Copyright 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, ©1987 by The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C. 20006. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will be subject to legal prosecution.

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

# ARTICLE 1
## THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 9.

# ARTICLE 2
## THE WORK OF THIS CONTRACT

The Contractor shall execute the entire Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others, or as follows:

```
Scope of work shall be for the construction of a branch library
as described in the contract documents (plans dated 12-7-95).
Work to be new general construction including site work, HVAC,
electrical, structural and components of the project.

See exhibit "A" for changes in the scope of work referenced
above.
```

# ARTICLE 3
## DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**3.1** The date of commencement is the date from which the Contract Time of Paragraph 3.2 is measured, and shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.

*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

Unless the date of commencement is established by a notice to proceed issued by the Owner, the Contractor shall notify the Owner in writing not less than five days before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

**3.2** The Contractor shall achieve Substantial Completion of the entire Work not later than

*(Insert the calendar date or number of calendar days after the date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Work, if not stated elsewhere in the Contract Documents.)*

```
305  Calendar Days (12/23/96)
```

, subject to adjustments of this Contract Time as provided in the Contract Documents.

*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*

```
The contractor shall pay liquidated damages in the sum of:
Two Hundred and no/100 . . . . . . . . . . . . . . . . .($200.00)
for each calendar day of delay until the work is substantially
complete.
```

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

## ARTICLE 4
## CONTRACT SUM

**4.1** The Owner shall pay the Contractor in current funds for the Contractor's performance of the Contract the Contract Sum of
Dollars
($ 1,089,744.00                                        ), subject to additions and deductions as provided in the Con-
tract Documents.

**4.2** The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are
hereby accepted by the Owner:

*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of
this Agreement, attach a schedule of such other alternates showing the amount for each and the date until which that amount is valid.)*

Deductive Alternate #1 ($21,177.00)
Contractor agrees to hold the price for this item for 180 calendar
days, in which time the owner may add the item back to the contract.

Deductive Alternate #2 ($15,000.00)

**4.3** Unit prices, if any, are as follows:

Removal of unsuitable soil and recompaction of select fill to 95%
ASTM D-1557 shall be at a rate of:

$6.00 per cubic yard

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

## ARTICLE 5
## PROGRESS PAYMENTS

**5.1**  Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**5.2**  The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**5.3**  Provided an Application for Payment is received by the Architect not later than the
25th day of a month, the Owner shall make payment to the Contractor not later than the  .          10th day of the proceeding month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than
15 days after the Architect receives the Application for Payment.

**5.4**  Each Application for Payment shall be based upon the schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work and be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**5.5**  Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

**5.6**  Subject to the provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

**5.6.1**  Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the total Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of                                                                                             ten percent
(          10  %). Pending final determination of cost to the Owner of changes in the Work, amounts not in the dispute may be included as provided in Subparagraph 7.3.7 of the General Conditions even though the Contract Sum has not yet been adjusted by Change Order;

**5.6.2**  Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of
percent (                    %);

**5.6.3**  Subtract the aggregate of previous payments made by the Owner; and

**5.6.4**  Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of the General Conditions.

**5.7**  The progress payment amount determined in accordance with Paragraph 5.6 shall be further modified under the following circumstances:

**5.7.1**  Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to
one hundred          percent (          100  %) of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work and unsettled claims; and

**5.7.2**  Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Subparagraph 9.10.3 of the General Conditions.

**5.8**  Reduction or limitation of retainage, if any, shall be as follows:

*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Subparagraphs 5.6.1 and 5.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

```
Retainage shall be limited to 10% of the first 50% of completed
construction.  Amount shall be held until substantial completion
of entire work.
```

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

## ARTICLE 6
## FINAL PAYMENT

Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when (1) the Contract has been fully performed by the Contractor except for the Contractor's responsibility to correct nonconforming Work as provided in Subparagraph 12.2.2 of the General Conditions and to satisfy other requirements, if any, which necessarily survive final payment; and (2) a final Certificate for Payment has been issued by the Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

## ARTICLE 7
## MISCELLANEOUS PROVISIONS

**7.1**  Where reference is made in this Agreement to a provision of the General Conditions or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**7.2**  Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

*(Insert rate of interest agreed upon, if any.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**7.3**  Other provisions:

## ARTICLE 8
## TERMINATION OR SUSPENSION

**8.1**  The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of the General Conditions.

**8.2**  The Work may be suspended by the Owner as provided in Article 14 of the General Conditions.

**WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.**

## ARTICLE 9
## ENUMERATION OF CONTRACT DOCUMENTS

**9.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

**9.1.1** The Agreement is this executed Standard Form of Agreement Between Owner and Contractor, AIA Document A101, 1987 Edition.

**9.1.2** The General Conditions are the General Conditions of the Contract for Construction, AIA Document A201, 1987 Edition.

**9.1.3** The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated 1 2 – 1 8 – 9 5 (Dated in Section 15000), and are as follows:

| Document | Title | Pages |
|---|---|---|
| Central Little Rock Branch Library | Section 00800 Supplementary Conditions | 3 |

**9.1.4** The Specifications are those contained in the Project Manual dated as in Subparagraph 9.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Pages |
|---|---|---|

See Exhibit "C" (Attached)

**AIA DOCUMENT A101** • OWNER-CONTRACTOR AGREEMENT • TWELFTH EDITION • AIA® • ©1987
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

**A101-1987   6**

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

**9.1.5** The Drawings are as follows, and are dated                              unless a different date is shown below:

*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Number | Title | Date |
|---|---|---|

See Exhibit "D"

**9.1.6** The addenda, if any, are as follows:

| Number | Date | Pages |
|---|---|---|
| #1 | 1-09-96 | 15 |
| #2 | 1-23-96 | 11 |

Portions of addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 9.

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

**9.1.7** Other documents, if any, forming part of the Contract Documents are as follows:

*(List here any additional documents which are intended to form part of the Contract Documents. The General Conditions provide that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

```
Exhibit "A" - Changes to the scope of work

Exhibit "B" - Bid for Lump Sum Contract
```

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

OWNER

_____
*(Signature)*

Bobby Roberts Owner
*(Printed name and title)*

CONTRACTOR

_____
*(Signature)*

L. R. Mourning    President
*(Printed name and title)*

 **CAUTION:** You should sign an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

## CHANGES TO THE SCOPE OF WORK

The following changes to the scope of work for the Central Little Rock Branch Library, shall be added or deleted as indicated from the base bid (EXHIBIT "B"):

1. Deduct precast and add E.I.F.S. at top and brick $41,555.00
   bottom in lieu of precast.  Includes skimcoat of
   E.I.F.S. @ CMU @ bottom of columns.

2. Change hollow metal window frames to white       $1,955.00
   painted aluminum.

3. Furnish 3" structural wood purlins in lieu of 5" $2,398.00

4. Change all carpet tiles and broadloom to         $5,013.00
   Wellco "Maxim II".

5. **Mechanical**                                    $3,384.00
   A.   Use more competitive brands of plumbing
        fixtures and trim...Deduct $1,012.00.

   B.   Use Sch. 10 Black Grooved Fittings on 2"
        & larger & Copper Pipe & Fittings on Sizes
        below 2" Chill & Hot water piping...
        Deduct $587.00.

   C.   Omit (16) Fire Dampers and add Radiation
        Dampers as per Engineer's request dated
        2/5/96...Deduct $1.785.00.

6. **Electrical**                                    $1,165.00
   A.   Delete four (4) J-Boxes for future lights.

   B.   Change electronic ballast in lay-in light
        fixtures to enegry saving ballast in non
        public areas.

   C.   Change 3/4" conduit to 1/2" conduit on
        switches.

7. Furnish vinyl covered accordion door in lieu of  $3,561.00
   fire rated accordion door.

8. Deduct library detection system                  $6,452.00

9. Eliminate retaining wall and remove 24"          $2,166.00
   mulberry

| | | |
|---|---|---|
| 10. | Use HD Grade 2 locksets in lieu HD Grade 1 locksets | $2,190.00 |
| 11. | Use corrugated polyethylene pipe in lieu of 18" PCP and use SDR-35 in lieu of PCP. | $2,448.00 |
| 12. | Deduct the $3,000.00 undercut allowance | $3,000.00 |
| 13. | Change piers, columns and pilasters to running bond in lieu of stack bond, also no recessed brick. | $3,000.00 |
| 14. | Deduct projection screen | $995.00 |
| 15. | Deduct chalk board | $365.00 |
| 16. | Deduct Epoxy floor and add VCT | $2,000.00 |
| 17. | Deduct display case/paper rack | $1,560.00 |
| 18. | Use architectural slate look shingle in lieu of standing seam roof. Change radius conditions interior and exterior to 45° angles. | $31,449.00 |

TOTAL                                                    $114,656.00

BID FOR LUMP SUM CONTRACT

DATE: JANUARY 25, 1996

Proposal of  L. R. MOURNING COMPANY

hereinafter called "Bidder" a corporation, organized and existing
under the laws of the State of   TEXAS         , a partnership,
or an individual doing business as_____

_____.

TO: Central Arkansas Library System, hereinafter called "Owner".

GENTLEMEN:

The Bidder, in compliance with your invitation for bids for the
Construction of an Academic Complex, having examined the Contract
Documents, the site of the proposed work, and being familiar with
the conditions surrounding the construction of the project,
including the availability of materials and labor, proposes to
construct the project in accordance with the Contract Documents,
within the time set forth, at the price(s) stated below.

Bidder agrees to commence work under this Contract on or before
date of Owner's written "Notice to Proceed" and to fully complete
the project in 305 consecutive calendar days.

Bidder acknowledges receipt of the following addenda:

No. 1:  Dated:  1 - 9 - 96

No. 2:  Dated:  1 - 23 - 96

No. 3:  Dated:  _____

No. 4:  Dated:  _____

No. 5:  Dated:  _____

    1.  BIDS

        A.  BASE BID:  Bidder agrees to perform all of the
general construction work including all work as
shown on the drawings and described in the
specifications for the sum of:

One Million Two Hundred Forty Thousand

Five Hundred Seventy Seven Dollars ($ 1,240,577 )

Section 00300-2

The Base Bid includes the removal of 500 cu. yds. of unsuitable soil, to be replaced with 500 cu. yds. of select fill recompacted to 95% ASTM D-1557. This work shall be at a cost of: $ 6.00 dollars per cubic yard for a total sum of: $ 3,000.00 . Any additional unsuitable soil shall be removed at the same rate. This amount shall be refunded to the owner if no unsuitable soil is found.

B.   **DEDUCTIVE ALTERNATIVES:**

1.   Ommit fence (including all wrought iron work & masonry columns) and concrete plaza from scope of work. Plaza to be replaced with bermuda sod as specified on landscape plan. Increase sprinkler system as required to cover additional sodded area.
     **Deduct from the base bid the sum of:**

     TWENTY ONE THOUSAND ONE HUNDRED SEVENTY

     SEVEN               Dollars ($ 21,177.00   )

2.   Replace sixteen (16) - Type 1 fixtures with twentyfour (24) - Forum: TDWC-400/1-LO.
     **Deduct from the base bid the sum of:**

     FIFTEEN THOUSAND ———————

     ———————————Dollars ($ 15,000.00  )

3.   Replace all Precast concrete with cast stone,
     **Deduct from the base bid the sum of:**

     No Bid

     ———————————Dollars ($            )

2.   CONDITIONS:

A.   The Owner reserves the right to accept or reject
     any or all bids and to waive formalities.

B.   The Bidder agrees that this bid shall not be
     withdrawn for a period of 30 calendar days after
     the scheduled closing time.

C.   Upon notice of the acceptance of this bid, Bidder
     shall execute the Contract and deliver a Surety
     Bond within 10 days.

D.   The bid security (5% of the Bid) attached in the
     sum of ____ 5% BID BOND ____ Dollars
     ($_____·____) is to become the property of the
     Owner in the event the contract and bond are not
     executed within the time set forth, as liquidated
     damages for delay and additional expenses to the
     Owner.

E.   Bidder must be licensed in the State of Arkansas
     in accordance with ACT 150 and ACT 728 of Arkansas
     Law.

     Respectfully submitted,

     By: _____

     Title   PRESIDENT

     Business Address  2230 COTTONDALE LANE

     Contractor's License No.   015360196

TABLE OF CONTENTS          **EXHIBIT "C"**

PROJECT MANUAL

FOR

CENTRAL LITTLE ROCK BRANCH LIBRARY

CENTRAL ARKANSAS LIBRARY SYSTEM
700 S. LOUISIANA ST.
LITTLE ROCK, ARKANSAS

Document No. and Title                          No. of Pages

00002     TABLE OF CONTENTS................................. 3
00010     INVITATION TO BID................................. 2
00100     INSTRUCTIONS TO BIDDERS........................... 18
00300     BID FORMS........................................ 3
00500     PROJECT FORMS.................................... 1
00600     BONDS AND CERTIFICATES........................... 3
00800     SUPPLEMENTARY CONDITIONS......................... 3
00850     INDEX TO DRAWINGS................................ 1
00900     ADDENDA & MODIFICATIONS.......................... 1

DIVISION 1 - GENERAL REQUIREMENTS

01005     ADMINISTRATIVE PROVISIONS........................ 3
01010     SUMMARY OF WORK.................................. 2
01020     GENERAL CONTRACTORS WORK......................... 5
01150     MEASUREMENTS & PAYMENT........................... 4
01152     APPLICATIONS FOR PAYMENT......................... 1
01300     SUBMITTALS....................................... 3
01510     TEMPORARY UTILITIES.............................. 2
01600     MATERIAL AND EQUIPMENT........................... 3
01700     CONTRACT CLOSEOUT................................ 3
01710     CLEANING......................................... 2
01720     PROJECT RECORD DOCUMENTS......................... 2

DIVISION 2 - SITE PREPARATION

02100     SITE PREPARATION................................. 1
02110     SITE CLEARING AND DEMOLITION..................... 3
02200     EARTHWORK........................................ 16
02281     TERMITE CONTROL.................................. 3
02490     LANDSCAPING...................................... 5
02500     PAVEMENTS AND WALKS.............................. 9
02520     PATTERNED CONCRETE............................... 3
02810     LANDSCAPE SPRINKLER SYSTEM....................... 5

DIVISION 3 - CONCRETE

| 03001 | CONCRETE WORK | 11 |
| 03450 | ARCHITECTURAL PRECAST CONCRETE | 5 |

DIVISION 4 - MASONRY

| 04100 | MORTAR | 4 |
| 04150 | MASONRY ACCESSORIES | 3 |
| 04210 | BRICK MASONRY | 3 |
| 04220 | CONCRETE UNIT MASONRY | 4 |
| 04270 | GLASS UNIT MASONRY | 5 |
| 04510 | MASONRY CLEANING | 1 |

DIVISION 5 - METALS

| 05120 | STRUCTURAL STEEL | 3 |
| 05300 | METAL DECKING | 2 |
| 05400 | COLD FORM FRAMING | 3 |
| 05500 | METAL FABRICATION | 3 |
| 05999 | MISCELLANEOUS STEEL | 2 |

DIVISION 6 - WOOD AND PLASTICS

| 06100 | ROUGH CARPENTRY | 2 |
| 06114 | WOOD BLOCKING AND CURBING | 2 |
| 06180 | GLUE LAMINATED MEMBERS | 3 |
| 06182 | WOOD ROOF DECK | 2 |
| 06200 | FINISH CARPENTRY | 5 |
| 06410 | CUSTOM CASEWORK | 4 |

DIVISION 7 - THERMAL AND MOISTURE PROTECTION

| 07100 | WATERPROOFING AND DAMPROOFING | 3 |
| 07180 | WATER REPELLENTS | 3 |
| 07210 | BATT INSULATION | 2 |
| 07212 | BOARD INSULATION | 2 |
| 07220 | BOARD ROOF DECK INSULATION | 3 |
| 07221 | RIGID ROOF DECK INSULATION | 2 |
| 07240 | COATED INSULATION SYSTEM | 2 |
| 07510 | MODIFIED BITUMEN SHEET METAL | 8 |
| 07600 | FLASHING AND SHEET METAL | 2 |
| 07610 | SHEETS METAL ROOFING - STANDING SEAM | 3 |
| 07631 | GUTTERS AND SPOUTS | 1 |
| 07700 | ROOF SPECIALITIES & ACCESSORIES | 2 |
| 07920 | SEALANTS AND CAULKINGS | 4 |

DIVISION 8 - DOORS AND WINDOWS

| 08100 | STEEL DOORS AND FRAMES | 4 |

08210          WOOD DOORS........................................ 2
08410          ALUMINUM EBTRANCE & STOREFRONT................... 3
08520          ALUMINUM WINDOWS................................. 2
08710          FINISH HARDWARE.................................. 6
08800          GLAZING......................................... 3

DIVISION 9 - FINISHES

09260          GYPSUM WALLBOARD SYSTEM.......................... 5
09300          CERAMIC TILE.................................... 3
09510          ACOUSTICAL CEILING.............................. 4
09650          RESILIENT FLOORING.............................. 4
09680          CARPETING....................................... 3
09900          PAINTING........................................ 5

DIVISION 10 - SPECIALTIES

10100          MISCELLANEOUS SPECIALITIES...................... 3
10160          METAL TOILET COMPARTMENTS....................... 2

DIVISION 11 - EQUIPMENT

DIVISION 12 - FURNISHINGS

DIVISION 13 - SPECIAL CONSTRUCTION

DIVISION 14 - CONVEYING SYSTEMS

DIVISION 15 -  MECHANICAL

15000          GENERAL....................................... 131

DIVISION 16 -  ELECTRICAL

16000          ELECTRICAL - GENERAL........................... 38

END OF TABLE OF CONTENTS

## INDEX TO DRAWINGS

| G1.1 | PROJECT TITLE/INFO.SHEET | 12-7-95 |
| G1.2 | SITE SURVEY | 12-7-95 |
| C1.1 | SITE PLAN | 12-7-95 |
| C1.2 | SITE GRADING, DRAINAGE & UTILITIES PLAN | 12-7-95 |
| C1.3 | SITE DETAILS | 12-7-95 |
| | | |
| L1.1 | LANDSCAPE PLAN | 12-7-95 |
| L1.2 | LANDSCAPE DETAILS | 12-7-95 |
| | | |
| A1.1 | FLOOR PLAN | 12-7-95 |
| A1.2 | CLEARSTORY PLAN | 12-7-95 |
| A1.3 | REFLECTED CEILING PLAN | 12-7-95 |
| A1.4 | FINISH SCHEDULE | 12-7-95 |
| | | |
| A2.1 | ROOF PLAN | 12-7-95 |
| A3.1 | ELEVATIONS | 12-7-95 |
| A3.2 | ELEVATION/BLDG. SECTION | 12-7-95 |
| A4.1 | BUILDING SECTION | 12-7-95 |
| A4.2 | WALL SECTIONS | 12-7-95 |
| A4.3 | WALL SECTIONS | 12-7-95 |
| A4.4 | WALL SECTIONS | 12-7-95 |
| A4.5 | DETAILS | 12-7-95 |
| A4.6 | DETAILS | 12-7-95 |
| A7.1 | DOOR SCHEDULE/ELEVATIONS | 12-7-95 |
| A7.2 | WINDOW ELEVATIONS/DOOR DETAILS | 12-7-95 |
| A8.1 | MILLWORK ELEVATIONS | 12-7-95 |
| A8.2 | MILLWORK ELEVATIONS | 12-7-95 |
| | | |
| S1.1 | FOUNDATION PLAN | 12-7-95 |
| S2.1 | FOUNDATION DETAILS | 12-7-95 |
| S3.1 | FRAMING PLAN | 12-7-95 |
| S4.1 | FRAMING DETAILS | 12-7-95 |
| S4.2 | BRACE ELEVATIONS/DETAILS & TRUSS PROFILES | 12-7-95 |
| | | |
| M1.0 | NOTES, LEGEND & INDEX | 12-7-95 |
| M1.1 | HVAC PLAN | 12-7-95 |
| M1.2 | HVAC PLAN | 12-7-95 |
| M2.1 | HVAC DETAILS | 12-7-95 |
| M2.2 | HVAC DETAILS | 12-7-95 |
| M3.1 | HVAC SCHEDULES | 12-7-95 |
| M3.2 | HVAC SCHEDULES | 12-7-95 |
| P1.0 | PLUMBING SITE PLAN | 12-7-95 |
| P1.1 | PLUMBING PLAN | 12-7-95 |
| P2.1 | PLUMBING DETAILS | 12-7-95 |
| E1.0 | ELECTRICAL SITE PLAN | 1-10-96 |
| E1.1 | LIGHTING PLAN | 1-10-96 |
| E2.1 | POWER & SYSTEMS PLAN | 1-10-96 |

Shee Cowan Williams
Midtown

# CENTRAL LITTLE ROCK
# BRANCH LIBRARY



## CENTRAL ARKANSAS LIBRARY SYSTEM

700 Louisiana Street
Little Rock, Arkansas 72201-4698
(501) 370-5954
Serving the City of Little Rock, Pulaski and Perry counties

# PROJECT MANUAL



**ARCHITECTURE INNOVATIONS GROUP**
*ARCHITECTURE – PLANNING – INTERIOR DESIGN*
209 WEST 2ND ST., LITTLE ROCK, AR 72201, (501) 372-2230

&

*THE STUCK ASSOCIATES*

Architecture
Planning
Interior Architecture

209 W. 2nd St., Ste. 210
Little Rock, Arkansas
(501) 372-2230  Fax 372-2261

PLAINTIFF'S
EXHIBIT
6

SECTION 15620

HEATING AND CHILLED WATER PIPING

PART 1 - GENERAL

1.01    SCOPE:

    A.    This system shall consist of all heating and chilled water piping as designated and as indicated on the plans.

    B.    Provide valves, drains, air vents and items as necessary for a complete and satisfactory operation.

1.02    Refer to Sections 15100 through 15190 for applicable requirements.

1.03    Submit air control devices for approval.


PART 2 - PRODUCTS

2.01    PIPE AND FITTINGS:                          *See 10 3m 300psi*

    A.    Pipe Above Ground:  Schedule 40 black steel or Type "L" copper, hard-drawn.  The Contractor, at his option, may use Type "K" copper, hard-drawn. (only one material may be used for the entire system)

    B.    Pipe Below Ground:  Same as specified for above ground.

    C.    Fittings:

        1.    Steel pipe:  150 lb. malleable iron, or welding fittings.

        2.    Copper pipe:  Wrought copper.

2.02    AIR CONTROL DEVICES:

    A.    Manual air vents shall be equal to Bell & Gossett No. 17.

    B.    Automatic air vents shall be equal to Bell & Gossett No. 7.

    C.    Control devices for closed piping systems shall be equal to Bell & Gossett Airtrol System.

PART 3 - EXECUTION

3.01    PIPING ARRANGEMENT:

    A.    See Section 15100.

    B.    Provide manual air vents at each coil.

C. Provide automatic air vents at high points on supply and return piping where accessible in Mechanical Rooms.

D. Where high points on supply and return main occur outside of the Mechanical Rooms, or extremely high in Mechanical Rooms, provide air vents on supply and return piping by running copper tubing from high point to nearest accessible drain. Provide cocks in tubing near discharge.

E. Provide a drain valve with hose connection at low points.

3.02 MAKE-UP WATER AND RELIEF:

A. For each system, provide pressure-reducing valve for feeding make-up water and a pressure relief valve.

B. Provide make-up water from nearest domestic water.

C. Operating pressures of PRV and relief valves shall be determined by required system pressures.

3.03 VALVES AND STRAINERS:

A. Valves used for service and isolation shall be gate or butterfly type. Through 2", ball valves may be used.

B. Balancing valves shall be either Sarcoflow balancing fittings, lubricated plug cock or butterfly valves.

C. Where service or isolation and balancing is required, a butterfly valve may service for both.

D. Check valves shall be spring type.

E. Strainers shall be "Y" type.

3.04 THERMAL EXPANSION:

A. See Section 15140 of this specification.

B. Anchors shall be installed a minimum of every 300 LF of total system, and at expansion joints.

3.05 BLACK STEEL PIPE ASSEMBLY:

A. Piping shall be installed with recognized industry standards.

B. Welding shall be performed by welders certified by National Certified Pipe Welding in the past 6 months.

3.06 COPPER PIPE ASSEMBLY:

A. See Section 15100.

B. Piping shall be installed with recognized industry standards.

3.07 TEST:

    A. Black Steel and Copper Pipe: Test system with air to a pressure of 125 PSI for a period of 2 hours minimum, proving system tight without the adding of air.

    B. Copies of test results, signed by the Contractor, shall be furnished to the Engineer.

END OF SECTION